Battle, J.
 

 The counsel for the lessors of the plaintiff admits in this Court, that his Honor in the Court below was correct in refusing his motion for a judgment by default against the heirs at law of Peter E. Maddera; and also his motion to be permitted to submit the case to the jury, upon the plea of not guilty, entered by the said Maddera in his lifetime. But he contcndsthat he was entitled to enter a judgment by default against the casual ejector, and thereupon, to issue a writ of possession, upon proving to the Court that the original declaration had been regularly served upon the said Maddera, who was then the tenant in possession.
 

 The counsel on the other side insists, that the suit abated, for the reason that there were no persons bróught before the Court to defend the action; that the scire
 
 facias,
 
 issued to notify the heirs, was insufficient, because it did not name them; that the several returns of the sheriff were a nullity for the same reason; and also because he had no power to decide who were the heirs at law, or whether they lived in or out of the State; and that, in consequence of these defects, the means prescribed in the Revised Statutes, ch. 2 sec. 7, S and 9, were not made effectual by the lessors of the plaintiff to prevent the abatement of the suit.
 

 The objections urged against the sufficiency of the
 
 scire facias
 
 are, we think, fully answered by what was said by the late Chief Justice Ruffin, in
 
 Roberson
 
 v.
 
 Woollard,
 
 6 Ire. Rep. 95. That was, so far-as this question is concerned, a
 
 scire facias
 
 against heirs to subject lands descended to them, to the payment of the debts of their ancestor, under the 63d ch. of the Rev. Slat. sec. 1.
 
 *56
 
 The
 
 scire facias
 
 was directed to the « heirs ” without naming them, and the Chief Justice said,
 
 “
 
 the precept need not name them, but leave it to the sheriff to summon and return them.” The words of that Statute, and tire one we have under consideration, are so nearly alike, and the purpose in view so much the same, that a construction put upon one, ought to be adopted in the other. If then die
 
 scire
 
 facias, required by the Act to prevent an abatement, may issue to the « heirs,” without naming them, leaving it to tire sheriff «to summon and return them,” the objection that the sheriff cannot exercise a judicial function in ascertaining and determining who are the heirs, necessarily vanishes. But the other objection still remains, that the sheriff does not mention the names of the heirs in any of his three returns— says they live out of the State, and adds, iir his last return, that he does not know what are their names. Is this a fatal objection? We think not. The Act is obviously one for the amendment of the law, and ought to receive a liberal interpretation. By the rules of the common law, if tire defendant in an action of ejectment died, the suit abated; in consequence of which, the lessor of the plaintiff was compelled to pay his own costs, and commence a new action. The expense and delay tints incurred were deemed unnecessary and unjust, and the Act in question was passed to prevent them. . It is contained in the 7th, 8th and 9th sections of the Rev. Stat. ch. 2. The 7th section declares that the action shall not abate by the death of the defendant — ami points out the manner in which it is to be revived against the heirs. 'Tire 8th provides for the appointment of a guardian to defend the heirs when they are minors; and the 9th prescribes the mode in which they are to be notified when they reside out of the State— the fact of then non-residence having been previously stated in the return of the sheriff. If the names of the heirs be known to the sheriff, there will be no difficulty on the part of the lessor in complying with the requisitions of the Statute, whether the heirs reside in or out of the State. But if they be unknown to the officer, as seems to have been the fact in this case, what is to be the result? Must an abatement necessarily taire place, on account of the inability of the party to comply literally with the require-
 
 *57
 
 mente of the Statute? Or, may the sheriff state in his return, that the names of the heirs are unknown to him, and that they reside out of the State, so that an advertisement may he published in some Gazette, notifying them, as “heirs” of the deceased defendant, to come’ in and be made parties in his stead? In the one case, the delay and expense will be incurred, which it was the object of the Statute to prevent; while in the other, the suit will be revived, without the possibility of the heirs being prejudiced by it. For if they come in and defend, the object of the notice will have been accomplished; and if they do not, they will not be subjected to the payment of any costs; and may at any time, unless their entiy be tolled, assert their title against the lessor, or any other person in possession cf the land. We think the latter is the liberal and proper construction of the act in the case supposed, which is, in truth, the case before us. Assuming the suit to have been revived by the course of proceedings, adopted by the lessor of the plaintiff, another question still remains: Could he, upon the heirs failing to appear, enter judgment against the casual ejector, and have a writ of possession thereon? A slight attention to the rules of proceeding in the action, satisfies us that he could. In England, when a declaration in ejectment is served upon the tenant in possession, the lessor is entitled to a judgment by default against the casual ejector, pf he fail to appear; and if he appear, he cannot be admitted to defend, unless he enters into the common rule, by which he agrees to confess,
 
 at the
 
 trial, lease, entry and ouster. If, when the trial comes on, he refuses to make the stipulated confession, tire plaintiff must be non-suited, because he cannot prove what is pure fiction; but in the end, says Blackstone in his Commentaries, vol. 3, page 204, judgment will be entered against the casual ejector; for the condition, on which the tenant was admitted to defend, is broken, and therefore the lessor of the plaintiff is put into the same situation as if he had never appeared at all. In our practice, as the judgment is entered in the same Court where the pleadings are made up, and the trial takes place, the lessor would not be nonsuited; but he would have judgment at once against the casual ejector — the defendant having forfeited all right to defend, on account of the breach of his condition.
 
 *58
 
 Such would bave been the result in this case, had the defendant, lived to the time of trial, and then refused to confess lease, entry and ouster. The defendant’s counsel admits that in such case the casual ejector would be evoked from the land of spirits, to which he said he had vanished, when the tenant was admitted to defend. If the defendant die, what, in reason and justice, is to prevent the casual ejector from being evoked again, to have judgment rendered against him, upon a default of the heirs to appear and defend ? To hold otherwise would be to belie the maxim,
 
 in fictione juris semper equitas existit.
 

 The order from which the appeal is taken, must be reversed, which must be certified to the Court below, that it may proceed therein according to law.
 

 Per Curiam. Judgment reversed.